THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MURRAY WINTERS, Appellant.

Argued January 10, 1945; decided July 19, 1945.

546

*Arthur N. Seiff* for appellant.  I. Subdivision 2 of section 1141 of the Penal Law is an unconstitutional repression of the State and Federal Constitutional guaranties of a free press. (*Thornhill* v. *Alabama*, 310 U. S. 88; *People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *Murphy* v. *Commonwealth*, 172 Mass. 264; *Wynehamer* against *The People*, 13 N. Y. 378.) II. Since subdivision 2 is in the disjunctive, this raises the question of the validity not merely of the statute taken as a whole, but of each one of the various classes of publications made a crime.  (*Stromberg* v. *California*, 283 U. S. 359; *Williams* v. *North Carolina*, 317 U. S. 287.)   III. Subdivision 2 is comprehensive with respect to the classifications of publications it proscribes.  Those classifications are general and all-inclusive.  The statute contains no exceptions or limitations in its application to writings falling within any of the classifications therein specified.  It makes no attempt at regulation or discrimination.  It is not regulation — it is repression.  Its character is such that it strikes at the very foundation of freedom of the press by arbitrarily outlawing an entire class of long-recognized literature.  (*Matter of Craig* v. *New York State Bonus Commission*, 210 App. Div. 732; *Matter of Pierse* v. *Zimmerman*, 255 App. Div. 708; *Matter of Bristol* v. *Buck*, 201 App. Div. 100, 234 N. Y. 504; *Cooper-Snell Co.* v. *State of New York*, 230 N. Y. 249; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341; *People ex rel. Knott Corp.* v. *Graves*, 286 N. Y. 377; *Stromberg* v. *California*, 283 U. S. 359; *Williams* v. *North Carolina*, 317 U. S. 287; *Martin* v. *Struthers*, 319 U. S. 141; *Colon* v. *Lisk*, 153 N. Y. 188.)   IV. The Appellate Division held, as the basis for its decision, that the magazines in this case " tend to demoralize the minds of their more impressionable readers," and that subdivision 2 is " aimed at restraining the publication and sale of such printed matter " and so is " a legitimate exercise of the police power of the State in that it is designed

to promote the general welfare and to protect the morals of the community ". In construing the statute thus, the Appellate Division erred in both respects; i.e., in amending, under the guise of construction, a statute whose language is clear and unambiguous, and in holding the statute so amended constitutional. (*P. R. T. Co.* v. *Dash,* 125 N. Y. 93; *Bayreuther* v. *Reinisch,* 264 App. Div. 138, 290 N. Y. 553; *People ex rel. Knott Corp.* v. *Graves,* 286 N. Y. 377; *Matter of Metropolitan Life Ins. Co.* v. *Boland,* 281 N. Y. 357; *Newell Universal Mill Co.* v. *Muxlow,* 115 N. Y. 170; *Green* v. *State of New York,* 251 App. Div. 108, 278 N. Y. 15; *Bridges* v. *California,* 314 U. S. 252; *Whitney* v. *California,* 274 U. S. 357; *Colon* v. *Lisk,* 153 N. Y. 188; *Schneider* v. *State,* 308 U. S. 147; *Martin* v. *Struthers,* 319 U. S. 141.)

*Emanuel Redfield* and *Osmond K. Fraenkel* for New York City Committee of American Civil Liberties Union, *amicus curiæ,* in support of appellant's position. I. Subdivision 2 of section 1141 of the Penal Law is unconstitutional as in violation of the Fourteenth Amendment of the Federal Constitution and section 8 of article I of the New York Constitution. (*Near* v. *Minnesota,* 283 U. S. 697; *Schenck* v. *United States,* 249 U. S. 47; *Whitney* v. *California,* 274 U. S. 357; *Gitlow* v. *New York,* 268 U. S. 652; *Herndon* v. *Lowry,* 301 U. S. 242; *Bridges* v. *California,* 314 U. S. 252; *Hartzel* v. *United States,* 322 U. S. 680; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Stromberg* v. *California,* 283 U. S. 359.) II. The statute is indefinite and therefore void. (*Herndon* v. *Lowry,* 301 U. S. 242; *Lanzetta* v. *New Jersey,* 306 U. S. 451.)

*Sidney R. Fleisher* for Authors' League of America, Inc., *amicus curiæ,* in support of appellant's position. The freedom of the press is restricted by the statute here invoked. (*Thornhill* v. *Alabama,* 310 U. S. 88; *United States* v. *Levine,* 83 F. 2d 156; *Lovell* v. *Griffin,* 303 U. S. 444; *Bridges* v. *California,* 314 U. S. 252; *Whitney* v. *California,* 274 U. S. 357; *Herndon* v. *Lowry,* 301 U. S. 242; *Cantwell* v. *Connecticut,* 310 U. S. 296.)

*Frank S. Hogan, District Attorney* (*Alan J. Elliot* and *Whitman Knapp* of counsel), for respondent. I. Subdivision 2 of section 1141 of the Penal Law is constitutional. (*People* v. *Ryan,* 274 N. Y. 149; *Chittendon Lumber Co.* v. *Silberblatt*

& *Lasker, Inc.,* 288 N. Y. 396; *City Bank F. T. Co.* v. *N. Y. C. R. R. Co.,* 253 N. Y. 49; *Surace* v. *Danna,* 248 N. Y. 18; *Blaschko* v. *Wurster,* 156 N. Y. 437; *Spencer* v. *Myers,* 150 N. Y. 269.) II. The statute as so construed is valid and constitutional. (*Near* v. *Minnesota,* 283 U. S. 697; *Gitlow* v. *New York,* 234 N. Y. 132, 268 U. S. 652; *Gilbert* v. *Minnesota,* 254 U. S. 325; *Schaefer* v. *United States,* 251 U. S. 466; *People* v. *Sanger,* 222 N. Y. 192; *People* v. *Byrne,* 99 Misc. 1; *State* v. *McKee,* 73 Conn. 18; *In re Banks,* 50 Kan. 242.)

LOUGHRAN, J. After trial in the Court of Special Sessions of the City of New York, the defendant was convicted upon charges that he had possessed certain printed materials with intent to sell them, contrary to Penal Law, article 106, section 1141, subdivision 2. The Appellate Division affirmed and the justice who wrote its opinion gave the defendant leave to present the case to us.

The relevant words of section 1141 are these: " A person * * * who * * *2. Prints, utters, publishes, sells, lends, gives away, distributes or shows, or has in his possession with intent to sell, lend, give away, distribute or show, or otherwise offers for sale, loan, gift or distribution, any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime * * * is guilty of a misdemeanor * * *." Numerous copies of magazines composed entirely of such pictures and stories were found on the occasion in question in the bookshop of the defendant.

Defense counsel takes the above text at its full literal meaning. " The statute [he says] makes no distinction between truth, fiction, or statistics. All come within its condemnation equally, provided they consist of ' criminal news ' or ' police reports ' or ' accounts of criminal deeds '." From his viewpoint the statute " condemns any publication devoted to and principally made up of criminal news or police reports or accounts of criminal deeds, regardless of the manner of treatment." This conception — which would outlaw all commentaries on crime from detective tales to scientific treatises — may, we think, be dismissed at once on the short ground that its manifest injustice

and absurdity were never intended by the Legislature. (See *Crooks* v. *Harrelson*, 282 U. S. 55.) On the other hand, we are to heed the rule which tells us to read a statutory text in accordance with the general subject matter of which it is a part. (See *Matter of Rouss*, 221 N. Y. 81, 91; *Matter of Kaplan* v. *Peyser*, 273 N. Y. 147.)

In this instance, the general subject matter constitutes Penal Law, article 106, the caption of which is "*Indecency.*" The above text forms subdivision 2 of section 1141 of article 106. The caption of section 1141 is "*Obscene prints and articles.*" Indecency and obscenity are not and never have been technical terms of the law and hence we are without any full or rigorous definition of the uses made thereof in the administration of justice. To be sure, our statutes dealing with indecent or obscene publications have generally been held to speak of that form of immorality which has relation to sexual impurity. (*People* v. *Muller*, 96 N. Y. 408; *Swearingen* v. *United States*, 161 U. S. 446.) Such indeed is the way this court has read subdivision 1 of section 1141 of the Penal Law (*People* v. *Eastman*, 188 N. Y. 478). But to limit the above words of subdivision 2 of section 1141 to that restricted meaning would be to reduce that subdivision to an unnecessary partial reduplication of subdivision 1. Since our respect for the Legislature is enough to keep us away from that interpretation, we move along to the question of the validity of the broader scope of subdivision 2. From this point on, that subdivision will be called the statute.

Indecency or obscenity is an offense against the public order. (9 Halsbury's Laws of England [1st ed.], pp. 530, 538; Harris & Wilshire's Criminal Law [17th ed.], p. 216; 1 Bishop's Criminal Law [9th ed.], §§ 500, 504.) Collections of pictures or stories of criminal deeds of bloodshed or lust unquestionably can be so massed as to become vehicles for inciting violent and depraved crimes against the person and in that case such publications are indecent or obscene in an admissible sense, though not necessarily in the sense of being calculated or intended to excite sexual passion. This idea, as it seems to us, was the principal reason for the enactment of the statute. (Cf. *Magon* v. *United States*, 248 F. 201, certiorari denied, 249 U. S. 618; *Matter of Foy Productions, Ltd.*, v. *Graves*, 278 N. Y. 498.)

There is, as we are also persuaded, ample warrant in the evidence for the finding that the magazines which were taken from the defendant's premises were obnoxious to the statute. The two thousand copies he kept there were tied up in small bundles that were suitable for delivery to distributors. There is proof of an admission by the defendant of his readiness to sell single copies indiscriminately. The contents are nothing but stories and pictures of criminal deeds of bloodshed and lust. The Appellate Division said: " The stories are embellished with pictures of fiendish and gruesome crimes, and are besprinkled with lurid photographs of victims and perpetrators. Featured articles bear such titles as ' Bargains in Bodies,' ' Girl Slave to a Love Cult ' and, ' Girls Reformatory.' " (268 App. Div. 30, 31.) It is not suggested that any of the contributors was distinguished by his place in the literary world or by the quality of his style. (Cf. *Halsey* v. *N. Y. Society,* 234 N. Y. 1.) In short, we have here before us accumulations of details of heinous wrongdoing which plainly carried an appeal to that portion of the public who (as many recent records remind us) are disposed to take to vice for its own sake. Whether the statute extends to accounts of criminal deeds not characterized by bloodshed or lust is a question that does not here arise. (See *United States* v. *Limehouse,* 285 U. S. 424; *Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571, 576; *People* v. *Sanger,* 222 N. Y. 192.)

We pass now to the defendant's contention that the statute is unconstitutional because the criterion of criminal liability thereunder is " a personal taste standard, uncertain, indefinite and *ex post facto* in its practical operation." In the nature of things there can be no more precise test of written indecency or obscenity than the continuing and changeable experience of the community as to what types of books are likely to bring about the corruption of public morals or other analogous injury to the public order. Consequently, a question as to whether a particular publication is indecent or obscene in that sense is a question of the times which must be determined as matter of fact, unless the appearances are thought to be necessarily harmless from the standpoint of public order or morality. (See *People* v. *Pesky,* 254 N. Y. 373; *People* v. *Wendling,* 258 N. Y. 451; *People* v. *Streep,* 264 N. Y. 666; *People* v. *Berg,* 269 N. Y. 514; *People* v. *Fellerman,* 269 N. Y. 629; *People* v. *Brewer,* 272

N. Y. 442; *Matter of Foy Productions, Ltd.,* v. *Graves,* 278 N. Y. 498; *People* v. *Osher,* 285 N. Y. 793.) Never has this perception been more forcefully expressed than in this sentence by CARDOZO, J.: "Law accepts as the pattern of its justice the morality of the community whose conduct it assumes to regulate." (Paradoxes of Legal Science, 37.) The constitutional validity of that standard has long been established. (*Rosen* v. *United States,* 161 U. S. 29. See *United States* v. *Rebhuhn,* 109 F. 2d 512, 514; *Magon* v. *United States,* 248 F. 201, certiorari denied 249 U. S. 618.)

Under the statute, as the defendant sees it, "publication of any crime book or magazine would be hazardous." For reasons that have already been stated, we believe this assertion to be an exaggeration; but the point is of little account in any event, since "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." (*Nash* v. *United States,* 229 U. S. 373, 377.) A recent illustration comes readily to hand: An occupier of land who by his use of it does an unreasonable injury to his neighbor's property can be held to answer therefor, though he may have been guilty of no more than an error of judgment. (*Dixon* v. *New York Trap Rock Corp.* 293 N. Y. 509.) So when reasonable men may fairly classify a publication as necessarily or naturally indecent or obscene, a mistaken view by the publisher as to its character or tendency is immaterial.

In anticipation perhaps of what we have already said, the defendant lastly argues for a fresh conception of freedom of the press under which the heretofore accepted requirements of decency would no longer be operative against obscene publications. We see no immediate necessity for announcing so radical a departure from the collective reasoning of our ancestors, a position whereof we think ourselves to be assured by the following words of the highest court in the land: "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any constitutional problem. These include

the lewd and obscene, the profane, the libelous, and the insulting or ' fighting ' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'' (*Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 571–572. See the cases there cited and 2 Cooley on Constitutional Limitations [8th ed.], pp. 886, 1328.)

The judgment should be affirmed.

LEHMAN, Ch. J., (dissenting). I dissent on the ground that the statute, as construed by the court, is so vague and indefinite as to permit punishment of the fair use of freedom of speech. (*Stromberg* v. *California,* 283 U. S. 359.) Though statutes directed against '' obscenity '' and '' indecency '' are not too vague when limited by judicial definition, they may be too vague when not so limited. (See *McJunkins* v. *State,* 10 Ind. 140; *Jennings* v. *State,* 16 Ind. 335.) It is the function of the Legislature to define the kind of conduct which is harmful from the standpoint of public order or morality and should be prohibited. Then the question whether the conduct of a defendant falls within that definition may be one of fact. The morality of the community does not, however, become the standard of permissible conduct until the Legislature has embodied its conception of that morality in a regulatory statute.

The judgment should be reversed.

LEWIS, CONWAY, DESMOND, THACHER and DYE, JJ., concur with LOUGHRAN, J.; LEHMAN, Ch. J., dissents in opinion.

Judgment affirmed. [See 294 N. Y. 979.]