253 F.2d 594
 J. T. FUQUA, N. C. Hancock, R. O. Hardy, C. E. Thompson, L. D. McCarley, L. E. Johnson, T. S. Thurmond, and Beldon A. Head, Appellants,
v.
UNITED STEELWORKERS OF AMERICA (AFL-CIO), an unincorporated association, James E. Payne and George Weakman, and Kentucky State Federation of Labor, an unincorporated association, Sam Ezelle, Secretary-Treasurer, John McKiernan, President, Appellees.
 No. 13338.
 United States Court of Appeals Sixth Circuit.
 March 28, 1958.
 
 G. S. Milam, J. Granville Clark, Russellville, Ky., for appellants.
 Elliot Bredhoff, Washington, D. C., Herbert L. Segal, Louisville, Ky. (Arthur J. Goldberg, Kenneth A. Meiklejohn, Washington, D. C., Cooper, Mitch & Black, Birmingham, Ala., on the brief), for appellees.
 Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.
 STEWART, Circuit Judge.
 
 
 1
 This is an appeal by the Mayor, Chief of Police, and members of the City Council of Russellville, Kentucky, from a judgment of the district court which permanently enjoined them from enforcing the provisions of an ordinance of that municipality. The ordinance in question, as amended December 4, 1956, makes it a criminal offense for a person to act as a "labor organizer and promoter" or "labor solicitor" in Russellville without securing a license. The original plaintiffs in the district court were the United Steelworkers of America (AFL-CIO) and two of its individual organizers. The Kentucky Federation of Labor and two of its officers were later permitted to intervene. All are appellees here.
 
 
 2
 As defined in the ordinance, a "labor organizer and promoter" is any officer, agent, or employee of a labor organization which requires payment of fees or dues as a condition of membership, who, for financial compensation, solicits employees to become members of the labor organization in which he is an officer, agent, or employee. A "labor solicitor" is an officer, agent, employee, or member of a labor organization which requires payment of fees or dues as a condition of membership, who, for financial compensation, solicits employees to become members of a labor organization in which he is not an officer, agent, employee, or member. The ordinance also makes it unlawful for any labor organization, as defined in the ordinance, to carry on either of these occupations in Russellville through any paid agent who is not so licensed.
 
 
 3
 The ordinance fixes the annual license fee for engaging in either of the named occupations at $25. In order to obtain a license an applicant must also file a signed and verified statement with the City Clerk containing the following information:
 
 
 4
 "A. Name, age, permanent address, local address, and place of birth of applicant.
 
 
 5
 "B. Whether applicant is a citizen of the United States.
 
 
 6
 "C. Whether he, or she, is an official, agent or employee of any labor organization; and if so, the name and address of such organization.
 
 
 7
 "D. Name and address of agent of such labor organization within Kentucky on whom process may be served.
 
 
 8
 "E. How long applicant has acted in such capacity, and at what places.
 
 
 9
 "F. Whether applicant has ever been convicted of any felony; if so, what and where.
 
 
 10
 "G. If ever convicted, have rights of citizenship been restored."
 
 
 11
 If the $25 is paid and the required information given, the ordinance appears to allow no subjective discretion to any city official in granting the license, since it provides:
 
 
 12
 "VI. The application hereinabove referred to shall be submitted by the City Clerk to the Mayor and City Council at the next meeting of said Council after the date said application is filed, and if the application gives the information required in Section V hereof, the City Council shall, by order, at the same meeting, direct the license applied for to be issued to the applicant for the period hereinafter set forth, and the City Clerk shall issue same immediately, upon receipt of license fee hereinafter stipulated."
 
 
 13
 Any license issued under the ordinance may be revoked by the Mayor and City Council, but only upon the ground that false information was submitted in the license application, or that the licensee was convicted of a felony.
 
 
 14
 Any person who acts as a "labor organizer and promoter" without the prescribed license is guilty of a misdemeanor, punishable by a fine of from $10 to $50, a jail term of not more than thirty days, or both. Any person who acts as a "labor solicitor" without the prescribed license may be punished by a fine of from $10 to $20, sentenced to jail for not more than ten days, or both. The ordinance further provides that, "Each day during any part of which said business is carried on or conducted within the City of Russellville, Kentucky, without a license as herein set forth, shall be separate offense."
 
 
 15
 The district court found that it had jurisdiction of the controversy. It found further that the plaintiffs would suffer irreparable injury unless the city officials were enjoined from enforcing the provisions of the ordinance. The court declared as a matter of law that the ordinance "is invalid and unconstitutional in that it applies, in interstate industries, to regulate activities of unions and their representatives, and the right of employees to select their representatives, all of which subjects lie in a field where the Congress has acted preemptively." Upon these grounds the permanent injunction was issued.
 
 
 16
 It is the position of the appellees on this appeal that the Russellville ordinance is invalid not only for the reasons stated by the district court, but also because it abridges rights guaranteed by the First and Fourteenth Amendments. Reliance is placed upon the following authorities, among others: Murdock v. Pennsylvania, 1943, 319 U.S. 105, 63 S.Ct. 891, 87 L.Ed. 1292; Thomas v. Collins, 1945, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430; Hill v. Florida, 1945, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782; Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546; Staub v. City of Baxley, 1958, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302. The appellants contend that these decisions are completely inapplicable to the present case, because there is nothing in the Russellville ordinance which either prohibits or restricts the exercise of rights guaranteed by the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., or which impairs Constitutional guarantees. They point out that the ordinance does not give any city official discretion to grant or refuse a license, and insist that the ordinance is a completely nondiscriminatory licensing provision, entirely consistent with other Russellville ordinances which evidence a uniform policy of requiring licenses to be obtained for conducting a variety of different occupations. Cf. Breard v. Alexandria, 1951, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233; Alabama State Federation of Labor v. McAdory, 1945, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725. For the reasons stated below, we do not reach the merits of these Constitutional issues.
 
 
 17
 The initial question is whether the district court had jurisdiction as a federal court to hear and decide this controversy. Numerous jurisdictional grounds were asserted in the complaint, among them, that the case arose "under the Constitution, laws or treaties of the United States,"[1] that it was one between citizens of different states,[2] that it arose under an "Act of Congress regulating commerce,"[3] and that it was one "to redress the deprivation under color of any * * * ordinance * * * of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."[4] The first two grounds required an amount in controversy in excess of $3,000, but the court found that its jurisdiction was clear "without regard to diversity of citizenship or amount in controversy because this is a proceeding arising under the law to regulate commerce," [152 F.Supp. 594] and that, therefore, federal jurisdiction existed under 28 U.S.C.A. § 1337. This determination was correct. A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873.
 
 
 18
 Notwithstanding the district court's power as a federal court to decide this case, however, the power was not to be invoked in the absence of circumstances justifying the exercise of equitable jurisdiction. The Supreme Court has clearly set forth the standards that must control the federal courts in determining whether in cases like this a cause of action in equity exists. A thorough discussion of these standards and of the important policy considerations which underlie them is found in Douglas v. Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324.
 
 
 19
 As there pointed out, federal courts of equity should conform to clearly defined Congressional policy, "* * * by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent. * * *
 
 
 20
 "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927. Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by [the Supreme] Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury `both great and immediate.'" 319 U.S. at pages 163-164, 63 S.Ct. at page 881.[5]
 
 
 21
 These standards were restated in Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138. There the context was a different one, but the controlling policy identical. "The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law. It is impressively reinforced when not merely the relations between coordinate courts but between coordinate political authorities are in issue. The special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment, see, e.g., 28 U.S.C. §§ 1341, 1342, 2283, 2284(5), 28 U.S.C.A. §§ 1341, 1342, 2283, 2284(5). This concern has been reflected in decisions of [the Supreme] Court, not governed by explicit congressional requirement, bearing on a State's enforcement of its criminal law. * * * It has received striking confirmation even where an important countervailing federal interest was involved." 342 U.S. at pages 120-121, 72 S.Ct. at page 120. See also Amalgamated Clothing Workers v. Richmond Bros., 1955, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600; Beal v. Missouri Pacific R. Corp., 1941, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577.
 
 
 22
 In determining the existence of equitable jurisdiction in cases like the present one it is, therefore, "a strict test" which the district court must apply. A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873. Within the meaning of that test the circumstances here did not, in our opinion, justify a finding of danger of irreparable injury which was so clear and immediate as to warrant the intervention of a federal court of equity. The record shows that the city authorities informed the appellees Payne and Weakman that if they failed to obtain licenses and if they solicited employees of Rockwell Manufacturing Company (an employer in or near Russellville concededly engaged in interstate commerce) to join a union, they would be prosecuted under the ordinance.
 
 
 23
 It thus "does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to [the Supreme] Court." Douglas v. Jeannette, 319 U.S. at page 164, 63 S.Ct. at page 881.
 
 
 24
 Moreover, it appears that even these state criminal proceedings could be avoided and a prompt determination of the Constitutional issues obtained through civil proceedings in the Kentucky courts. Under Kentucky law the appellees apparently could open this alternative avenue by paying the $25 license fees and initiating proceedings to recover the amounts paid. The Kentucky Court of Appeals has ruled that the payment of an occupational license fee under these circumstances does not prevent the licensee from attacking the validity of the license requirement in a suit to recover the fee. Ziedman & Pollie, Inc. v. City of Ashland, 1932, 244 Ky. 279, 50 S.W.2d 557; River Excursion Co. v. City of Louisville, 1932, 244 Ky. 811, 51 S.W.2d 470.[6]
 
 
 25
 The present case thus differs markedly from Denton v. City of Carrollton, Georgia, 5 Cir., 1956, 235 F.2d 481, cited by the district judge. There the occupations for which a license was required covered activities extending long after completion of union organization; the fees payable by each licensee could total $32,300 a year. Moreover, the court in that case found it doubtful that the Constitutional issues could be tested in the state courts by paying the fees and suing for their recovery. The circumstances in A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, are even less comparable. In that case the complaint alleged that the Florida constitutional amendment in question, F.S.A.Const. Declaration of Rights, § 12, affected five hundred collective bargaining agreements covering one hundred thousand employees throughout the state. Many of the existing agreements were expiring, and the Court found that under these circumstances the allegations of the complaint were sufficient to show "an imminent threat to an entire system of collective bargaining, a threat which, if carried through, will have such repercussions on the relationship between capital and labor as to cause irreparable damage." 327 U.S. at page 595, 66 S.Ct. at page 767. The record before us shows no such vast and imminent threat.
 
 
 26
 The judgment is set aside and the case remanded to the district court for further proceedings consistent with the views here expressed.
 
 
 
 Notes:
 
 
 [1]
 28 U.S.C.A. § 1331
 
 
 [2]
 28 U.S.C.A. § 1332
 
 
 [3]
 28 U.S.C.A. § 1337
 
 
 [4]
 28 U.S.C.A. § 1343
 
 
 [5]
 But c. f. Morrison v. Davis, 5 Cir., 252 F.2d 102
 
 
 [6]
 The record shows that the Russellville City Attorney told the appellees that the city would cooperate in getting the Constitutional issues decided expeditiously in either civil or criminal proceedings