**Robert A. WERNER**

v.

**CITY OF KNOXVILLE et al.**

**Civ. A. No. 3425.**

United States District Court
E. D. Tennessee, N. D.

April 3, 1958.

Harold B. Stone, Knoxville, Tenn., for plaintiff.

George Morton, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This case was heard on January 22, 1958 on plaintiff's motion to restrain further action of defendants, who compose the Board of Review of the City of Knoxville, pending the outcome of the suit, or in the alternative to restrain the Board from implying to the public that Gateway Newsstand, Inc., or its owner, Werner, is the sole agency offering for sale publications banned by the Board. At the conclusion of that hearing the Court made findings of fact and conclusions of law in a memorandum opinion delivered from the bench which has been transcribed to typewriting and made a part of the record. Reference is now made to that memorandum for all purposes.

Before the Court is plaintiff's motion for summary judgment in his favor filed pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A., upon the ground that the Ordinance under which the Board has acted, and is presently acting, is unconstitutional because it violates the First and Fourteenth Amendments of the Constitution of the United States.

Ordinance No. 1768, codified as Section 49 of Chapter 30 of the 1945 Code of the City of Knoxville, is under attack. It was amended by Ordinance No. 2077. This Ordinance as amended relates to the sale, display for sale, and distribution of books, magazines and other publications which prominently feature crime, obscenity, or the commission or attempted commission, of 'certain enumerated common law crimes, by drawings, photographs or printed words.

Sub-section (b) creates a Board of Review and vests in it the power and duty to determine the publications that are banned by the Ordinance. If five members of the Board, consisting of seven, (the original Ordinance provided for the unanimous decision of the Board) determine that a publication is contraband, notice shall be given by the Board of its findings to the party or parties selling or displaying for sale, or distribution, such publication and an order given him immediately to desist and cease therefrom under the penalties provided for in sub-section (j), which provides for a fine of not less than $5 or more than $50. Each day any violation continues shall constitute a separate offense.

Sub-Section (e) provides that: "It shall be lawful for any person, firm or corporation to sell, offer for sale, display for sale, print, distribute or offer for distribution any book, magazine or other publication which prominently features an account of crime, or is obscene, or depicts, by the use of drawings or photographs or printed words, obscene actions and accounts, or the commission or attempted commission of the crimes of arson, assault with a deadly weapon, burglary, kidnapping, mayhem, murder, rape, robbery, theft, or voluntary manslaughter."

Sub-Section (g) provides that: "This ordinance shall not apply to those accounts of crime which are part of the general dissemination of news, nor to such drawings and photographs used to illustrate such accounts."

■ Obscenity is not protected by the freedom of speech and press guaranties in the First Amendment. The opinion of the Supreme Court in the recent case of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, dealt with the case of Roth which arose under a Federal statute relating to obscenity and Alberts, which arose under the California penal code that related to the same subject. Said the Court in 354 U.S. at page 485, 77 S.Ct. at page 1309: "We hold that obscenity is not within the area of constitutionally protected speech or press."

■ Standards for determining obscenity have been evolved by the courts over a period of years. If the material as a whole appeals "to prurient interest" it is deemed obscene. Under an earlier standard, if isolated portions of the material appealed to lustful interests of people most susceptible, it was considered obscene.

"The early leading standard of obscenity allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. Regina v. Hicklin (1868) L.R. 3 Q.B. 360. Some American courts adopted this standard but later decisions have rejected it and substituted this test: whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest. The Hicklin test, judging obscenity by the effect of isolated passages upon the most susceptible persons, might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press. On the other hand, the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity." Roth v. United States, supra, 354 U.S. at page 489, 77 S.Ct. at page 1311.

■ The State, under its police power may punish those who abuse their freedoms of speech or press by utterances or printed words that tend "to corrupt public morals, incite to crime, or disturb the public peace, is not open to question." Gitlow v. New York, 268 U.S. 652, at page 667, 45 S.Ct. 625, 630, 69 L.Ed. 1138. Action by a City under the authority of the State is considered State action.

■ Obscenity was an offense at common law. 1 Bishop, Criminal Law (9th ed.), Sec. 500; Wharton, Criminal Law (12 ed.), Sec. 16. A paramount duty of the State is to exercise its police power to minimize those things that are calculated to undermine the morals of its citizens and to incite crime. But the Ordinance here does more than proscribe obscene publications. It proscribes publications that may not be obscene or harmful under legal standards. Publications are banned "in which there are prominently featured an account of crime, * * *" Many valuable books deal with crime in a prominent manner but do so to teach lessons calculated to strengthen the character of the citizen. The lesson most emphasized is that crime does not pay.

■ An Ordinance that penalizes acts that are protected by the freedoms of speech and press in the First Amendment is violative of the Fourteenth Amendment. Stromberg v. California, 283 U.S. 359, at page 369, 51 S.Ct. 532, 75 L.Ed. 1117; Herndon v. Lowry, 301 U.S. 242, at page 259, 57 S.Ct. 732, 81 L.Ed. 1066.

■ Failure of an Ordinance to give fair notice of what acts will be punished and what acts are protected by the First Amendment violates procedural due process of freedoms of speech and press. Criminal statutes require higher standards of certainty than civil statutes. Connally v. General Construction Co., 269 U.S. 385, at page 391, 46 S.Ct. 126, 70 L.Ed. 322.

The Supreme Court considered sub-Section (2) of Section 1141 of the New

York Penal Law, McKinney's Consol. Laws, c. 40 in the case of Winters v. New York, 333 U.S. 507, at page 508, 68 S.Ct. 665, 92 L.Ed. 840. This Ordinance contains language similar to the language in the Ordinance in the instant case. Following is the language in the New York statute:

"§ 1141. Obscene prints and articles

"1. A person who * * *,

"2. Prints, utters, publishes, sells, lends, gives away, distributes or shows, or has in his possession with intent to sell, lend, give away, distribute or show, or otherwise offers for sale, loan, gift or distribution, any book, pamphlet, magazine, newspaper or other printed paper devoted to the publication, and principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime; * * *

"Is guilty of a misdemeanor, * * * * "

The Court held that the Ordinance was so vague and indefinite as to violate the Fourteenth Amendment by prohibiting acts within the protection of the guaranty of free speech of the First Amendment:

"The subsection of the New York Penal Law, as now interpreted by the Court of Appeals [294 N.Y. 545, 63 N.E.2d 98], prohibits distribution of a magazine principally made up of criminal news or stories of deeds of bloodshed, or lust, so massed as to become vehicles for inciting violent and depraved crimes against the person. But even considering the gloss put upon the literal meaning by the Court of Appeals' restriction of the statute to collections of stories 'so massed as to become vehicles for inciting violent and depraved crimes against the person * * * not necessarily * * * sexual passion,' we find the specification of

publications, prohibited from distribution, too uncertain and indefinite to justify the conviction of this petitioner. Even though all detective tales and treatises on criminology are not forbidden, and though publications made up of criminal deeds not characterized by bloodshed or lust are omitted from the interpretation of the Court of Appeals, we think fair use of collections of pictures and stories would be interdicted because of the utter impossibility of the actor or the trier to know where this new standard of guilt would draw the line between the allowable and the forbidden publications. No intent or purpose is required—no indecency or obscenity in any sense heretofore known to the law. 'So massed as to incite to crime' can become meaningful only by concrete instances. This one example is not enough. The clause proposes to punish the printing and circulation of publications that courts or juries may think influence generally persons to commit crimes of violence against the person. No conspiracy to commit a crime is required. See Musser v. Utah [333 U.S. 95], 68 S.Ct. 397, [92 L.Ed. 562]. It is not an effective notice of new crime. The clause has no technical or common law meaning. Nor can light as to the meaning be gained from the section as a whole or the Article of the Penal Law under which it appears. As said in the Cohen Grocery Company case [United States v. L. Cohen Groc. Co.] supra, 255 U.S. 81, at page 89, 41 S.Ct. [298], at page 300, 65 L.Ed. 516.

" 'It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.'

"The statute as construed by the Court of Appeals does not limit

punishment to the indecent and obscene, as formerly understood. When stories of deeds of bloodshed, such as many in the accused magazines, are massed so as to incite to violent crimes, the statute is violated. It does not seem to us that an honest distributor of publications could know when he might be held to have ignored such a prohibition. Collections of tales of war horrors, otherwise unexceptionable, might well be found to be 'massed' so as to become 'vehicles for inciting violent and depraved crimes.' Where a statute is so vague as to make criminal an innocent act, a conviction under it cannot be sustained. Herndon v. Lowry, 301 U.S. 242, 259, 57 S.Ct. 732, 739." Winters v. New York, 333 U.S. 507, at pages 518, 519, 520, 68 S.Ct. at page 671.

The Court was careful to point out in 333 U.S. on page 520, 68 S.Ct. on page 672 that nothing in the opinion should be construed as prohibiting the state from punishing circulation of obscene material, if not protected by the principles of the First Amendment by use of appropriate words and referred to Section 1141, sub-Section (1) of the New York statute quoted in note 2, as an example.

The foregoing case was argued three times before the Court reached its decision. Thus, showing the difficulties that arise in reaching a decision involving Ordinances similar to the one under consideration. In reaching a decision the Court must not trespass upon the important duty of the state to eliminate publications that corrupt the morals of its citizens and at the same time protect the constitutional freedoms of speech and press.

 The Ordinance under consideration not only makes unlawful publications which prominently feature crime but also those that give accounts of specific common law crimes like theft, robbery, rape, voluntary manslaughter, etc. This portion of the Ordinance illustrates further the broad powers of censorship given the Board without guides or standards for the exercise of such powers. The Board could, if so minded, eliminate from the bookstores and libraries many wholesome books and publications, a power that could be characterized as unfettered censorship. "Such a power is so abhorrent to our traditions that a purpose to grant it should not be easily inferred." Hannegan v. Esquire, Inc., 327 U.S. 146, 151, 66 S.Ct. 456, 459, 90 L.Ed. 586.

In Butler v. Michigan, 1956, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412, appellant was convicted under a section of the Michigan penal code which made it a misdemeanor to sell or make available to the general reading public any book containing obscene language tending to the corruption of the morals of youth. The book was sold to a police officer. The Court in holding that the statute under which appellant was convicted violated the due process clause of the Fourteenth Amendment, said in part in 352 U.S. at pages 382, 383, 384, 77 S.Ct. at page 525:

"It is clear on the record that appellant was convicted because Michigan, by § 343, made it an offense for him to make available for the general reading public (and he in fact sold to a police officer) a book that the trial judge found to have a potentially deleterious influence upon youth. The State insists that, by thus quarantining the general reading public against books not too rugged for grown men and women in order to shield juvenile innocence, it is exercising its power to promote the general welfare. Surely, this is to burn the house to roast the pig. Indeed, the Solicitor General of Michigan has, with characteristic candor, advised the Court that Michigan has a statute specifically designed to protect its children against obscene matter 'tending to the corruption of the morals of youth.' But

the appellant was not convicted for violating this statute.

"We have before us legislation not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society."

In Staub v. City of Baxley, 1958, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302, the Court considered and held invalid an Ordinance which made it an offense to solicit citizens of the City of Baxley to become members of a Union, or organization, without receiving a permit from the Mayor and Council. The Court in 355 U.S. at page 325, 78 S.Ct. at page 284 said:

"It is undeniable that the ordinance authorized the Mayor and council of the City of Baxley to grant 'or refuse to grant' the required permit in their uncontrolled discretion. It thus makes enjoyment of speech contingent upon the will of the Mayor and council of the city, although that fundamental right is made free from congressional abridgement by the First Amendment and is protected by the Fourteenth from invasion by state action. For these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon the enjoyment of First Amendment freedoms and lays 'a forbidden burden upon the exercise of liberty protected by the Constitution.' Cantwell v. Connecticut, supra, 310 U.S. [296], at 307, 60 S.Ct. [900], at page 905, [84 L. Ed. 1213]. Therefore, the judgment of conviction must fall."

The Supreme Court has gone far to uphold state and Federal statutes that have dealt with offenses difficult to define except when such statutes have been mixed with limitations on free expressions of thought, either orally or in print. Omaechevarria v. Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763; Waters-Pierce Oil Co. v. Texas, 212 U.S. 86, 29 S.Ct. 220, 53 L.Ed. 417; Gorin v. United States, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488; United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877.

But fairness requires that criminal statutes inform those who are subject to such statutes as to what conduct on their part will render them liable for penalties. Connally v. General Const. Co., supra, 269 U.S. 385, 391, 46 S.Ct. 126.

The Ordinance under consideration fails to meet this requirement. Moreover, it includes acts which are included in the constitutional freedoms of the First Amendment and which are protected from State interference by the Fourteenth Amendment.

The recent case of Fuqua v. United Steelworkers of America, 6 Cir., 253 F.2d 594, has given the Court concern. That case holds that a Federal court has the power to decide cases of the character under consideration but such power should not be exercised in the absence of circumstances demanding the use of equitable jurisdiction. That case also involved a city ordinance. In the present case all parties have agreed that the Court not only has the power to decide but that equitable jurisdiction demands decision.

In summary the Court holds that the Ordinance is so vague as to violate the Fourteenth Amendment by prohibiting the exercise of freedoms of speech and press which are guaranteed by the First Amendment.

An order has been passed to the clerk putting in effect the views here expressed.