[Nos. 45363, 45397, 45424,  En Banc.  April 26, 1979.]
45425, 45426, 45427.

THE STATE OF WASHINGTON, *Appellant,* v. KATHLEEN
A. ZUANICH, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. LINDA
GAIL HANSEN, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. SANDRA
FAITH BOHENSTIEL, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. SHIRLEY
FRENCH, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. GARY
LEE WARDELL, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. JOHN
O'NEILL, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. LARRY
ALLEN FECTEAU, ET AL, *Respondents.*

THE STATE OF WASHINGTON, *Appellant,* v. JOHN
MACK BRANDES, *Respondent.*

*Christopher T. Bayley, Prosecuting Attorney for King County, Mary Kay Barbieri, Deputy,* and *David S. McEachran, Prosecuting Attorney for Whatcom County,* and *Phillip A. Serka, Deputy,* for appellant.

*John A. Strait, Pasqual J. Sferra,* and *Michael J. Slish,* for respondents.

DOLLIVER, J.—A single question is presented by these appeals: Is RCW 9A.88.030 unconstitutionally void for vagueness? In each instance, these cases were dismissed prior to trial so that no factual determination was made as to the precise conduct in which defendants were engaged. We hold RCW 9A.88.030 to be constitutional and reverse the trial courts.

■ It is important to understand the focus of defendants' case. They do not complain the statute is vague only as applied to their conduct or the hypothetical conduct of others. *See Parker v. Levy,* 417 U.S. 733, 756, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974); *State v. Hegge,* 89 Wn.2d 584,

574 P.2d 386 (1978). Rather, each defendant alleges the term "sexual conduct" in RCW 9A.88.030 is impermissibly vague and that the statute on its face is unconstitutionally void for vagueness. Since they attack the statute under which they have been accused as vague and with no standards regardless of their conduct, they have standing. *See Lanzetta v. New Jersey,* 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939); *Coates v. Cincinnati,* 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975).

■ The test for vagueness under these circumstances is well described in *Bellevue v. Miller, supra,* where we held that, although a statute may be "potentially vague as to some conduct, [it] may nevertheless be constitutionally applied to one whose act clearly falls within the statute's 'hard core.'"

The test of RCW 9A.88.030, the prostitution statute, is:

(1) A person is guilty of prostitution if such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

(2) Prostitution is a misdemeanor.

Defendants Zuanich, Hansen and Bohenstiel were charged under it.

RCW 9A.88.080, the promoting prostitution statute reads:

(1) A person is guilty of promoting prostitution in the second degree if he knowingly:

(a) Profits from prostitution; or

(b) Advances prostitution.

(2) Promoting prostitution in the second degree is a class C felony.

Defendants Brandes, Wardell, Ross, Fecteau, O'Neill and French were charged under it. As can be seen, the validity of RCW 9A.88.080 depends upon the constitutionality of RCW 9A.88.030. Is there a "hard core" to the meaning of "sexual conduct" which will save RCW 9A.88.030 from constitutional attack?

█ Among his affidavits, defendant Brandes submits a "poll" conducted among 104 persons "encountered at random in the University District of Seattle". It purports to illustrate an inability of what are denoted "citizens of common intelligence" to "distinguish between innocent sexual activity and 'sexual conduct' in the context of the state prostitution laws." A variety of questions are asked as to whether certain activities are sexual conduct. As is the case in most polls conducted to prove a point, the answers are prefigured by the questions. The one question which defendants neglect to ask is whether heterosexual genital intercourse is sexual conduct. While there may be some pre–Fall Eden in which this question could not be answered affirmatively, to argue that heterosexual genital intercourse is not sexual conduct is a doctrine to which no reasonable person could ascribe. Nor can it reasonably be asserted that legislative intent to include heterosexual genital intercourse within the meaning of sexual conduct is not clear on the face of the statute.

Since 1967, New York State has had a statute on prostitution as follows:

A person is guilty of prostitution [if] when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.

Prostitution is a [misdemeanor.] class B Misdemeanor.

N.Y. Penal Law § 230.00 (39 McKinney, 1977–78 Supp. at 67). Except for the word "when" instead of the word "if", and the insertion of "class B", the Washington and New York statutes are identical. The precise question of whether the term "sexual conduct" as used in the New York statute is unconstitutionally vague has been addressed by the United States Court of Appeals for the Second Circuit. In *United States v. Herrera,* 584 F.2d 1137, 1149 (2d Cir. 1978), the court stated:

This prohibition against excessive vagueness does not, however, invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "in

most English words and phrases there lurk uncertainties." *Robinson v. United States,* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). All the Due Process clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope.[3] Even in criminal cases where the vagueness standard is more stringently applied, the statute must only present "ascertainable standards of guilt." *Winters v. People of State of New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1944); *United States v. Petrillo,* 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

We have little doubt that the New York statute is not so vague that "men of common intelligence must necessarily guess at its meaning." *Connelly v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). We do not believe that the defendants were "required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. State of New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The New York statute clearly places men of reasonable intelligence on notice that they cannot promote prostitution. The definition of prostitution as being a person who engages or agrees or offers to engage in sexual conduct with another person in return for a fee is not so vague as to make persons of common intelligence guess at its meaning. Although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that can be sufficiently understood and complied with by the ordinary person exercising ordinary common sense. Moreover, even if the outermost boundaries of the statute may be imprecise, any such uncertainty has little relevance here where the defendants' conduct falls squarely within the "hard core" of the statute's proscriptions. *See Broadrick v. Oklahoma,* [413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973)]; *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Williams v. United States,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *Robinson*

*v. United States,* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); *United States v. Wurzbach,* 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1934).

In *People v. Costello,* 90 Misc.2d 431, 395 N.Y.S.2d 139 (Sup.Ct.N.Y.Cty.1977), Costello's argument that his conviction for promoting prostitution should be set aside because the phrases "sexual conduct" and "fee" are unconstitutionally vague was rejected by the court. We believe the statute establishes standards of guilt, at least as definite as those which withstood the same constitutional challenge in *People v. Capparelli,* 29 A.D.2d 1000, 289 N.Y.S.2d 499 (1968), affirmed, 25 N.Y.2d 832, 303 N.Y.S.2d 685 (1969); and in *Rose v. Locke,* [423 U.S. 48, 46 L. Ed. 2d 185, 96 S. Ct. 243 (1975)], and, accordingly, is constitutional.

[3]This is not a case in which the statute threatens a fundamental right such as freedom of speech so as to call for any special judicial scrutiny. *See Rose v. Locke* [423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975)]; *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

Furthermore, in a recent case we had occasion to consider a statute relating to a sex crime where the arguments as to vagueness were considerably more substantial than they are here.

In *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977), the defendant argued the pimping statute then in effect was unconstitutionally vague on its face. That statute, RCW 9.79.060, provided:

Every person who—

. . .

(3) Shall give, offer, or promise any compensation, gratuity or reward, to procure any person for the purpose of placing such person for *immoral purposes* in any house of prostitution, or elsewhere; . . .

. . .

Shall be punished by imprisonment in the state penitentiary for not less than one year nor more than five years.

(Italics ours.)

In response to the argument as to vagueness, we said:

Appellant alleges the words "immoral purposes" found in RCW 9.79.060(3) did not sufficiently define the conduct sought to be proscribed as criminal and thus RCW 9.79.060(3) must be declared unconstitutionally vague. The requirement that criminal legislation be definite in language is premised on two considerations. First, the statute must provide fair notice, measured by common practice and understanding, of that conduct which is prohibited, so that persons of reasonable understanding are not required to guess at the meaning of the enactment. Second, the statute must contain ascertainable standards for adjudication so that police, judges, and juries are not free to decide what is prohibited and what is not, depending on the facts in each particular case. *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975); *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975).

We might not hesitate to agree with appellant that the words "immoral purposes" found in RCW 9.79.060(3) were too vague under constitutional standards were we looking at these words in a vacuum. However, we agree with the trial court that in the context of RCW 9.79.060(3), these words clearly provided persons of common intelligence and understanding with fair notice and ascertainable standards of the conduct sought to be prohibited. RCW 9.79 was entitled "Sex Crimes" and RCW 9.79.060 was entitled "Placing persons in house of prostitution—Pimping." Further, RCW 9.79.060(3) made it a crime to "offer . . . any compensation . . . to procure any person for the purpose of placing such person for immoral purposes *in any house of prostitution,* or elsewhere . . ." (Italics ours.) The words "in any house of prostitution," plus the chapter and section headings of RCW 9.79.060 certainly provided a person of reasonable intelligence and understanding with notice that immoral purposes meant sexually immoral purposes involving acts of prostitution. We fail to see how appellant was denied due process under the vagueness doctrine.

*Carter,* at 240–41.

We believe the arguments in *Herrera* and *Carter* are decisive in this case. One final question is raised by defendants, however. They point to a repealed definition of "sexual conduct" in Laws of 1973, 1st Ex. Sess., ch. 154, §

124, p. 1199 (RCW 9.79.030), and other recent changes made in the criminal code relative to prostitution as well as varying suggestions by prosecuting attorneys as to what is within the statutory ambit of "sexual conduct" as giving evidence of vagueness having been admitted by both legislators and prosecutors. Defendants also suggest that "the flirting of a braless waitress, the dancing of a go–go girl, the operation of a kissing booth, and even the Miss America bathing suit competition" could fall within the term "sexual conduct".

All of this is interesting but irrelevant. The sole question is whether there is a "hard core" of conduct within the phrase "sexual conduct" which saves it from the infirmity of vagueness. We find heterosexual genital intercourse is this hard core conduct and the constitutional test is met. There may well be other activities which could qualify as "hard core" a it pertains to sexual conduct. However, we need not list them as "heterosexual genital intercourse" alone is sufficient to overcome the constitutional challenge for vagueness.

The precise conduct of defendants is unknown since charges were dismissed. We do not know if the defendants were in fact operating a kissing booth or some other such innocent enterprise. Once this is discovered, we may then, if called upon to do so, determine the constitutionality of the statute as it applies to defendants. For now, we hold RCW 9A.88.030 on its face not to be unconstitutionally vague. The trial courts are reversed.

ROSELLINI, WRIGHT, and HOROWITZ, JJ., and NORDQUIST, J. Pro Tem., concur.

STAFFORD, J. (dissenting)—In most cases we have been willing to sift through legislative history and let the cards fall where they may. Why then does the majority have such a strained reluctance, in this case, to recognize the obvious legislative history, legislative admonitions and legal pitfalls? It would seem the difficulty may stem from a natural

adult desire to appear "men of the world" who understand the "obvious" things that "worldly" people must know. To profess that position here one must not admit the unpleasant fact that a prostitution statute fails to provide constitutionally required fair notice or standards of conduct and thus is impermissibly void for vagueness. Rather, one must create a judicial substitute for that which the legislature failed to do. This, I fear, leads to a result based more on personal predilections than upon statutory construction.

I am compelled to dissent for seven reasons discussed below. First, the majority has studiously ignored the important legislative history of RCW 9A.88.030 which gives rise to the current definition of "prostitution" as "sexual conduct with another person in return for a fee." Similarly it has brushed aside RCW 9A.88.080, the validity of which depends upon the constitutionality of RCW 9A.88.030. Second, in interpreting "prostitution" and the term "sexual conduct" the majority has totally ignored an important explanation of the bill's co–sponsor who was also chairman of the sponsoring Senate Judiciary Committee. Third, the majority has improperly sanctioned subsequent case–by–case judicial definition of legislatively enacted crimes. Fourth, in attempting to divine the legislature's intent in defining "prostitution" as "sexual conduct with another person in return for a fee" the majority has relied improperly upon statutory titles and subtitles. Fifth, the majority has made an abortive attempt to define "prostitution" and explain the term "sexual conduct." In so doing it has further muddied waters already clouded by the legislative definition. Sixth, even assuming the majority's judicial definition is not vague, it is wholly inconsistent with the statute it attempts to define. Finally, the majority relies strongly on both *United States v. Herrera,* 584 F.2d 1137, 1149 (2d Cir. 1978) and *State v. Carter,* 89 Wn.2d 236, 570 P.2d 1218 (1977) neither of which is in point.

Defendants Zuanich, Hansen and Bohenstiel were charged in Whatcom County with prostitution in violation of RCW 9A.88.030. Defendants Brandes, Wardell, Ross,

Fecteau, O'Neill and French were charged in King County with promoting prostitution in the second degree in violation of RCW 9A.88.080. Each defendant moved to dismiss the charges asserting that the new offense of prostitution contained in RCW 9A.88.030 (and upon which RCW 9A.88-.080 is dependent) is unconstitutionally void for vagueness. The trial courts agreed and dismissed the charges.

The State appealed in each case. Since each appeal turns basically upon the constitutionality of RCW 9A.88.030, the appeals were consolidated and thereafter certified to this court by the Court of Appeals. I would affirm the several trial courts' determination that RCW 9A.88.030 and .080 are unconstitutionally vague.

At the outset appellant State asserts defendants' lack of standing to challenge RCW 9A.88.030 and .080. I agree with the majority that all defendants have standing to challenge RCW 9A.88.030 and .080 on the grounds of impermissible vagueness. Thus, the threshold question of standing will not be discussed further.

The majority, while agreeing that defendants have standing, contends the series of dismissals has prevented us from knowing the facts in each case. Such information is totally irrelevant, however, under the vagueness challenge before us.

When it is argued that the language of a legislative proscription is impermissibly vague, either because the enactment fails to give fair notice of the kind of conduct that is unlawful or because law enforcement officials are not provided adequate standards by which to evaluate the unlawfulness of particular conduct, the factual setting out of which the case arises can be wholly irrelevant. *Bellevue v. Miller*, 85 Wn.2d 539, 541, 536 P.2d 603 (1975). When it is asserted that an entire statute fails to specify adequately the activity that is prohibited, courts will look to the face of the enactment to determine whether any conviction based upon the proscription could be constitutionally upheld. In such cases, courts are not concerned with a defendant's awareness of the law or with the nature of a defendant's

conduct. *Bellevue v. Miller, supra* at 541. As stated in *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939):

> If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression.

(Citations omitted.) *See Coates v. Cincinnati,* 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971); *Winters v. New York,* 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665 (1948).

A due process challenge asserting that a criminal statute contains *no standards* does not involve unconstitutional vagueness "'in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that *no standard of conduct is specified at all.*'" (Italics mine.) *Parker v. Levy,* 417 U.S. 733, 755, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974); *Coates v. Cincinnati, supra* at 614. *See Bellevue v. Miller, supra* at 540–42. RCW 9A.88.030 and .080 are challenged as impermissibly vague in the sense that *they specify no standard of conduct and provide no adequate notice of that which is proscribed. Parker v. Levy, supra* at 755; *Coates v. Cincinnati, supra* at 614. The initial question, then, is whether RCW 9A.88.030 and .080 lack a standard of conduct and fail to provide constitutionally required notice of proscribed acts thus rendering them impermissibly vague.

I

*The legislative history of RCW 9A.88.030 and .080 give rise to vagueness in the statutory definition of "prostitution".*

As mentioned above, the majority studiously avoided the legislative history of RCW 9A.88.030 which gives rise to the current definition of "prostitution" as "sexual conduct with another person in return for a fee." Similarly it has brushed

aside any real consideration of RCW 9A.88.080 which depends for its definition, and thus its validity, upon RCW 9A.88.030. A resolution of the constitutional issues involved, without a consideration of the statutes' background, is unfortunate in light of the peculiar setting in which the historical background leaves the challenged statutes. It is insufficient to merely compare the words of our statutes with those of New York. The legislative background of RCW 9A.88.030 and .080 places them in a unique setting not reflected by a word for word comparison.

Defendants Zuanich, Hansen and Bohenstiel were charged with prostitution under RCW 9A.88.030(1):

> A person is guilty of *prostitution* if such person engages or agrees or offers to engage in *sexual conduct* with another person in return for a fee.

(Italics mine.) Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.88-.030. Defendants Brandes, Wardell, Ross, Fecteau, O'Neill and French were charged with promoting prostitution under RCW 9A.88.010(1):

> A person is guilty of promoting prostitution in the second degree if he knowingly:
> (a) Profits from *prostitution*;
> (b) Advances *prostitution.*

(Italics mine.) Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.88-.080. The terms "advances prostitution" and "profits from prostitution" are further defined in RCW 9A.88.060.[1] However, the offense of "promoting prostitution" charged under RCW 9A.88.080 necessarily involves conduct constituting "prostitution" under RCW 9A.88.030. Thus, if the offense of prostitution is impermissibly vague, the offense of promoting prostitution is equally vague. Consequently, it is necessary for one to direct his inquiry to the offense of prostitution under RCW 9A.88.030.

The question of whether RCW 9A.88.030 is unconstitu-

---

[1] "9A.88.060 Promoting prostitution—Definitions. The following definitions are applicable in RCW 9A.88.070 through 9A.88.090:

tionally vague requires an examination of the history of the offense of prostitution. Prior to the enactment of RCW 9A.88.030 in 1975, *it was not a crime to be a "prostitute."* Rather, all criminal penalties attendant upon the vice of prostitution were aimed at those persons who were responsible for placing one in a house of prostitution or at those who profited therefrom. *See, e.g.,* Laws of 1909, ch. 249, § 188; Laws of 1927, ch. 186, § 1; Laws of 1973, 1st Ex. Sess., ch. 154, § 127. Moreover, prior to 1973, even these statutory penalties applied only if the person convicted was responsible for placing *females* in a house of prostitution or profited therefrom. *See* Laws of 1909, ch. 249, § 188; Laws of 1927, ch. 186, § 1.

Prior to 1975 it was a crime to accept the earnings of a "common prostitute." Although the term "common prostitute" was never defined by the legislature, this court interpreted the term to mean a *woman* who offered her body for indiscriminate *sexual intercourse* with more than one man. *State v. Chemeres,* 20 Wn.2d 712, 147 P.2d 815, 150 P.2d 1012 (1944); *State v. Thuna,* 59 Wash. 689, 109 P. 331, 111 P. 768 (1910). *See State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973). Under our interpretation, the female need not have received a fee for such intercourse to be a "common prostitute." *State v. Thuna, supra; State v. Emerson, supra.* Also clear from our interpretation was the fact that the conduct of the prostitute warranting conviction of the

---

"(1) 'Advances prostitution.' A person 'advances *prostitution*' if, acting other than as a *prostitute* or as a customer thereof, he causes or aids a person to commit or engage in prostitution, procures or solicits customers for *prostitution*, provides persons or premises for *prostitution* purposes, operates or assists in the operation of a house of *prostitution* or a *prostitution* enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of *prostitution.*

"(2) 'Profits from prostitution.' A person 'profits from *prostitution*' if, acting other than as a *prostitute* receiving compensation for personally rendered *prostitution* services, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of *prostitution* activity. [1975 1st ex.s. c. 260 § 9A.88-.060.]" (Italics mine.)

"procurer" or "pimp" was limited to heterosexual intercourse.

In 1973, the legislature *for the first time* specified the conduct of the prostitute which was required to sustain a conviction of the *procurer or pimp. Still prostitution itself was not made a crime.* Laws of 1973, 1st Ex. Sess., ch. 154, § 124 (RCW 9.79.030) provided:

> The word prostitution as used in this chapter and title means any sexual conduct engaged in for a fee or agreed or offered to be engaged in for a fee between persons not married to each other. Sexual conduct means either or both sexual intercourse or any conduct involving the sex organs of one person and the mouth or anus of another.

The *conduct* considered to be prostitution also was extended beyond *heterosexual* intercourse for the first time to include other conduct involving the sex organs of one person and the mouth and anus of another. Further, as defined in the 1973 act, prostitution involved sexual conduct wherein a fee was expected or received. The 1973 definition clearly altered this court's common–law interpretation which had limited the *conduct,* that would support conviction of a procurer or pimp, solely to sexual intercourse by the prostitute regardless of whether a fee was expected or received.

In 1975, the legislature repealed *both its 1973 definition of prostitution and all former criminal penalties applicable to persons responsible for placing one in a house of prostitution or applicable to those who profited from such prostitution.* Laws of 1975, 1st Ex. Sess., ch. 14, § 10(3); Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92(205).

Thereafter, the legislature enacted the new offense of prostitution at issue here. Laws of 1975, 1st Ex. sess., ch. 260, § 9A.88.030–.050. The code now provides:

RCW 9A.88.030(1):

> A person is guilty of *prostitution* if such person engages or agrees or offers to engage in *sexual conduct* with another person in return for a fee.

RCW 9A.88.050:

In any prosecution for prostitution, the sex of the two parties or prospective parties to the *sexual conduct* engaged in, contemplated, or solicited is immaterial, and it is no defense that:

(1) Such persons were of the same sex; or

(2) The person who received, agreed to receive, or solicited a fee was a male and the person who paid or agreed or offered to pay such fee was female.

(Italics mine.)

The 1975 legislation makes it clear that the sex of the participants involved in "sexual conduct" is irrelevant. Contrary to both our former common–law interpretation and the 1973 legislative definition, prostitution now may involve conduct between persons of the same sex, *i.e.,* homosexual prostitution. Expected or actual receipt of a fee for such sexual conduct is also an element of the offense.

Defendants' complaint is that uncertainty of constitutional dimensions arises from the type of *conduct* now proscribed. The mere term "sexual conduct" is said to be too indefinite to provide fair notice of the conduct intended to be prohibited. Thus, they assert, the trial courts correctly determined that RCW 9A.88.030 and .080 are unconstitutionally void for vagueness.

The requirement that criminal legislation must use definite language is premised upon two considerations. First, the statute must provide *fair notice,* measured by common practice and understanding, of that conduct which is prohibited, so that persons of reasonable understanding are not required to guess at the meaning of the enactment. *State v. Carter, supra* at 240; *Bellevue v. Miller, supra* at 542–44; *Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). Second, the statute must contain *ascertainable standards for adjudication* so that police, prosecuting attorneys, judges, and juries are not free to decide what is and what is not prohibited based upon their own personal predilections and the facts in each particular case. *State v. Carter, supra* at 240; *Bellevue v. Miller, supra* at 542–44;

*Blondheim v. State, supra* at 878. *See Grant County v. Bohne,* 89 Wn.2d 953, 577 P.2d 138 (1978).

If "sexual conduct" is viewed in a vacuum, the array of possible conduct intended to be proscribed is vast. However, even in the context of the 1975 prostitution statute, the possible activities proscribed are many. Whether the term "sexual conduct" provides fair notice of which conduct is forbidden is what must now be determined.

Prior to the 1973 legislative specific definition of "sexual conduct," this court assumed that the prostitute's conduct referred exclusively to *heterosexual intercourse.* Our limited interpretation was rejected by the legislature in 1973, when the conduct constituting prostitution was expanded to include both *heterosexual and homosexual intercourse* and other sexual conduct involving the mouth or anus. However, the 1973 legislative definition was repealed by the 1975 legislature. At this time the legislature again defined prostitution by reference to "sexual conduct" but did not specify just what conduct was proscribed. Understandably, some uncertainty might arise over the meaning attributable to "sexual conduct" when considered in light of this court's earlier view and the legislature's differing view of the matter. This is particularly true since both heterosexual and homosexual conduct may now give rise to a charge of prostitution if engaged in with another person for a fee.

The uncertainty arising from judicial and legislative changes in the precise *conduct* constituting prostitution is further compounded by uncertainty of the prosecuting attorneys herein. Even *they* could not agree on just what conduct is proscribed. The King County prosecuting attorney suggested the following conduct is included within the phrase "sexual conduct": (1) acts of homosexual or heterosexual intercourse, oral sex, and masturbation; or (2) conduct proscribed by the 1973 legislative definition (although obviously repealed). The King County prosecuting attorney's brief also asserts that common sense indicates the following, somewhat obtuse, behavior is "sexual conduct":

"sex", "straight lay", "screw", "blow job", "acts of prostitution", or "disposal of rubber". The Whatcom County prosecuting attorney goes further and in addition to masturbation, oral sex and sexual intercourse suggests that four types of conduct may be included within the definition of "sexual conduct": (1) behavior involving the contact by one person done for the purpose of gratifying the sexual desire of either party;[2] (2) any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party;[3] (3) masturbation, homosexuality, sexual intercourse or physical contact of the person's clothed or unclothed genitals, pubic areas, buttocks, or, if the person be female, the breasts; or (4) ultimate sex acts, normal or perverted, actual or simulated, or which involve acts of masturbation, fellatio, cunnilingus, lewd exhibition of the genitals and sexual relations between humans and animals.[4]

---

[2]This definition is derived from the term "sexual *contact*" as defined in RCW 9A.88.100(2) (not "sexual *conduct*").

[3]This definition also is derived from the term "sexual *contact*" as defined in RCW 9A.88.100(2) (not "sexual *conduct*").

[4]The State here asserts that fair notice of the meaning of "sexual conduct" was provided by our statement in *State v. J–R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973) that this type of specific sexual conduct would be *obscene* if portrayed in various ways.

The assertion that we defined "sexual conduct" in *State v. J–R Distribs., Inc.*, *supra*, as "ultimate sex acts, normal or perverted, actual or simulated, or which depict acts of masturbation, fellatio, cunnilingus, lewd exhibitions of the genitals and sexual relations between humans and animals" and should now utilize this "definition" for purposes of the offense of prostitution is wholly without merit. First, *J–R Distributors* was concerned with the crime of obscenity not prostitution. Second, we did not define "sexual conduct" but defined "obscenity." We merely listed some patently offensive sexual conduct that would be deemed *obscene* if portrayed in photographs, pictures and drawings.

Further, if *J–R Distributors* were held to provide the fair notice of what "sexual conduct" means for purposes of RCW 9A.88.030, the prostitution statute would be reduced to an utter absurdity. I cannot believe the legislature intended to proscribe as prostitution "*ultimate sexual acts,* normal or perverted, actual or *simulated,* . . . lewd exhibition of the genitals and sexual relations between *humans and animals* . . ." While the foregoing may constitute some other crime or crimes, I seriously doubt that such would fall within any statutory or common–

I cannot believe reasonable persons would be put on fair notice by the words "sexual conduct" that physical contact of persons' clothed or unclothed genitals, pubic areas, buttocks or female breasts fall within the offense of prostitution.

None of the foregoing definitions of "sexual conduct" suggested by the prosecuting attorneys can be said to provide the fair notice required by the due process clause. In fact the prosecuting attorneys cannot agree between themselves. Certainly fair notice cannot be obtained by reference to the 1973 legislative definition of "sexual conduct" since one cannot be said to ,have received notice of a current statutory prohibition by reference to a *repealed* enactment.

Although the State appears to suggest it, fair notice is not provided by reference to the element of "sexual *contact*" required by the offense of indecent liberties. *See* RCW 9A.88.100. RCW 9A.88.100(2) provides:

> For purposes of this section [indecent liberties], "sexual *contact*" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

(Italics mine.) Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.88-.100. One cannot be said to have received fair notice that "sexual *conduct*" means "sexual *contact*" as specifically defined in the same chapter, and by its own terms refers to a separate and distinct criminal offense.

In light of the breadth of possible conduct that logically could fall within "sexual conduct" as proscribed by RCW 9A.88.030, I have no hesitation in agreeing with defendants that RCW 9A.88.030 and .080 are vague and thus unconstitutionally infirm. Neither this court, the legislature nor the prosecuting attorneys in these cases agree on the precise conduct prohibited by the current prostitution statute. That the conduct must be sexual may be conceded. Yet which of the various types of suggested "sexual conduct"

law definition of "prostitution" even though falling within a broad definition of "sexual conduct."

are prohibited so as to put a reasonable person on notice? Further, for which of the various types of "sexual conduct" may prosecuting attorneys charge a person with prostitution? This guesswork is precisely what the due process clause forbids: *i.e.*, failure to provide fair notice of proscribed acts and the arbitrary enforcement of the law depending upon the facts of each particular case and the predilections of prosecuting attorneys, judges, and law enforcement personnel.

## II

*Disregard of legislative intent expressed by the cosponsor of the bill who was also chairman of the sponsoring Senate Judiciary Committee.*

Normally events surrounding the enactment of a statute are considered a source of information indicative of a legislative intent embodied therein. Thus, the history of a measure, during its enactment, generally has been the first extrinsic aid to which courts have turned in attempting to construe a facially vague act. J. Sutherland, *Statutory Construction* § 5003, at 484–87 (3d ed. 1943). For example, statements and explanations of the draftsman of a proposed bill as to his understanding of its nature and effect have been accepted as indicative of the legislative intent because it is reasonable to assume, as to the unchanged portions of the bill, the legislature adopted the view of the draftsman. J. Sutherland, *Statutory Construction* § 5009, at 496–97. Further, when a bill is reported out of a standing committee, the statements or remarks of the chairman upon presenting the bill and the answers made by him to questions asked by members normally are considered in construing provisions of the bill subsequently enacted into law. In fact, these statements are entitled to the same weight accorded formal committee reports. J. Sutherland, *Statutory Construction* § 5013, at 503–04.

Unfortunately, in the case at hand the majority has totally disregarded an important statement of legislative intent made by the bill's cosponsor who was also chairman

of the sponsoring Senate Judiciary Committee. The explanation, of course, runs counter to the expressed view of the majority and thus, not surprisingly, was ignored. However, the statement makes it crystal clear the legislature actually adopted a vague statute for the specific purpose of providing law enforcement officers and prosecuting attorneys with an extensive net of undefined dimensions to make their jobs easier. Specificity and clarity were *intentionally* rejected in favor of future case–by–case definition by the judiciary. This is evidenced not only by substitution of the 1975 nondefinition for the specific definition found in the 1973 statute but by the comments of Senator Francis, cosponsor and chairman of the Senate Judiciary Committee, as well.

The remarks of Senator Francis follow:

POINT OF INQUIRY

*Senator Cunningham*: "Would Senator Francis yield to a question? Senator Francis, one thing I would like to ask, on page 7 of the bill *you refer several times to sexual conduct.* In that I cannot find that specific phrase defined anywhere in the act. *I simply would like to ask what the definition is of sexual conduct* as referred to specifically in this bill, Substitute Senate Bill 2313?"

*Senator Francis*: "That is a good question, Senator, and it has been defined by case law to include not only sexual intercourse but other kinds of acts which generally result in a sexual climax and *the definition probably had best be left to continue to expand by case law,* because otherwise, and this is assuming that you agree with the policy behind this bill which is that prostitution is an evil which should be stamped out, because this bill clearly clamps down on prostitution. And *if you more narrowly define sexual conduct, I think you will find that there will be someone creative and ingenious enough to find a way around it* every time. And this has been kind of the long continuing problem of prostitution cropping up in new guises all the time and so forth, so that *I would think that case by case development of the definition would probably be appropriate* for this particular criminal conduct."

*Senator Cunningham*: "To continue with a question to Senator Francis: Senator Francis, I have already said I think the package is fine but what I am concerned about is here a person is going to be guilty of a misdemeanor simply to agree, and I think the definition is just too broad and I am wondering, you know, different strokes for different folks. I do not think we want to run the police into the ground on this thing. Now *if you are trying to say, define sexual conduct as intercourse, then I do not know why you do not do it in the bill* although I see you are not the prime sponsor on the bill, it is out of your committee, and give these people some hard facts to work with and not be this general. *I still want to know why you will not define in the bill.*"

*Senator Francis*: "Senator Cunningham, again, *I certainly am not speaking for myself when I am trying to tell you how the bill got to where it is.* I personally would advocate the decriminalization of prostitution and have consistently advocated the decriminalization of prostitution. In Seattle it is estimated that the police department spends a million dollars a year working on trying to entrap people who have engaged in conduct otherwise legal but where there is financial remuneration in one direction or another and therefore we classify it as illegal. I think it is silly to waste our time trying to tell people they cannot spend their money in this area but *that is the considered judgment, at least of the Judiciary Committee, and my job is to explain what we are doing here.* Now if you accept the premise that we have to, through the use of law, enforce the prohibition against people passing money back and forth *in connection with sexuality, then you have to look at the difficult problem that law enforcement has.* For example, Lynnwood recently not only outlawed, they had long since outlawed body painting studios. They then passed an ordinance outlawing sauna parlors and dating bureaus, and they had some evidence that people who were putting together dating bureaus and escort services were merely using this as a means where men could meet women and then things might progress further and apparently some of the proprietors, at least they suspected, had exactly that in mind, that this would be another front for prostitution. I can name you several other kinds of apparently legitimate business operations that the police have gone into

and have at least developed some evidence that they in some way or another involve an exchange of money for sexual conduct of some nature. And so the law enforcement people that we are handing the very tough job of policing, and it is a tough job because the people involved, you know, since there is no victim, are not reporting it, so you have to go get some kind of James Bond type to infiltrate the operation and come up with a big 'aha' and say 'Look at there, I got you.' And because of that it is very, very tough to enforce. *This proposal here would* definitely tighten up the law against prostitution and *make it easier to enforce.*"

(Italics mine.) Senate Journal, 44th Legislature (1975), at 748–49.

The intentional facial vagueness of the statute should not have been ignored by the majority. The legislature not only intended to create statutory ambiguity, it succeeded in doing so. This does not comport with constitutional principles for fair notice or required standards governing proscribed conduct heretofore recognized by this court.

As we said in *Seattle v. Pullman,* 82 Wn.2d 794, 799, 514 P.2d 1059 (1973):

It is no answer to a finding of vagueness that good faith actions by law enforcement will result in only the proper exercise of this penal ordinance. As we stated in *Drew* [*Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967)] at pages 409–10:
This assurance, however, does not save the ordinance because "well intentioned prosecutors . . . do not neutralize the vice of a vague law."

Similarly the United States Supreme Court held in *Papachristou v. Jacksonville,* 405 U.S. 156, 170, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972):

Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." *Thornhill v. Alabama,* 310 U.S. 88, 97–98.

In light of the Senate Judiciary Committee's intent, as expressed by its chairman, and in light of the vagueness of the statute adopted, there can be little question that the danger predicted in *Papachristou* has materialized.

### III

*The majority has improperly approved of subsequent case–by–case judicial definition of legislatively created crimes.*

As indicated above, it was the clear intent of the legislature to establish criminal penalties for the crime of "prostitution" and to describe the nature of the crime in such vague terms that the judiciary, of necessity, must provide subsequent case–by–case definition. This is an unconstitutional approach to the legislative development of criminal law. In striking down such a congressional enactment, the Supreme Court said in *United States v. Reese,* 92 U.S. 214, 221, 23 L. Ed. 563 (1875):

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. . . .
>
> To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty.
>
> We must, therefore, decide that Congress has not as yet provided by "appropriate legislation" for the punishment of the offence [*sic*] charged in the indictment . . .

In this regard legislative attempts to pass on to the courts the task of resolving, on a case–by–case basis, the definition of legislatively created criminal offenses have met with stiff judicial opposition. *Due Process Requirements of Definiteness in Statutes* 62 Harv. L. Rev. 77 (1948), a landmark treatment of the subject, considers statutory definiteness and case–by–case judicial interpretation or definition of vague statutes. It first points out that two major statutory functions may be fundamentally affected

by indefiniteness or vagueness: (1) the function of guiding *adjudication* of rights and duties, and (2) the guiding of *individuals* so they may plan their own future conduct. The latter being of primary important in this case I shall discuss it alone.

As explained in 62 Harv. L. Rev. 77, to the extent a statute places a penalty on *completed* acts judicial concepts of fair notice require that the statute be sufficiently definite to give notice of what conduct is violative so that penalties may be avoided. In gauging the sufficiency of a statute to serve as a guide to future conduct, the notice provided therein must be looked at through the eyes, first, of those who may be impacted thereby, and second, of their lawyers. For example, a judicial interpretation can add definiteness for guidance of an individual *only if rendered before the act in question was committed.* Judicial interpretations made *after* the time of the act come too late to warn the individual of the need to seek legal advice and, if he has already sought it, too late to aid his lawyer in rendering such advice. In fact, vagueness, unresolved by a *prior* court decision, may even prevent an individual from knowing whether he should seek legal advice in the first place. *Such is the problem before us.* Even the prosecuting attorneys involved herein could not agree upon a definition of "prostitution" or "sexual conduct".

Even assuming this court should properly step into the breach, even assuming this court should rectify the statutory ambiguity by supplying its own definition, thus deciding who should fall within the net of criminality and who should not, one must not forget that the definition was not supplied until *today.* This is well over a year *subsequent* to the time these defendants were charged with the crimes herein. Thus, even accepting the validity of the majority's judicially supplied definition as to *future* acts (which I do not) it is clear these defendants had no such definition available to them at the critical time. Whether the instant judicial definition will provide an adequate definition for other persons in the *future* is of no real moment in the case

at hand. The fact is *these defendants had no adequate notice* that their conduct was criminal *at the time they acted.* It is essential that defendants have a fair warning, whether legislatively or judicially supplied, at a point in time *prior* to the state court litigation and contemporaneous with the act which the state seeks to punish.[5] Consequently, at the very least RCW 9A.88.030 and .080 are unconstitutionally vague as to these defendants.[6]

## IV

*The majority has relied improperly on statutory titles and subtitles to define the statute itself.*

Reference to *State v. Carter, supra* at 240–41 and the material quoted therefrom makes it abundantly clear the majority, in defining "prostitution" and "sexual conduct",

---

[5] The problem illustrated by the instant case is not like those wherein a judicial definition or interpretation has been reached *subsequent* to a defendant's act but in which the definition or interpretation has been based upon the prior *adjudication* of other relevant cases. For such an example *see Parker v. Levy,* 417 U.S. 733, 752–55, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974) (the law was upheld because it had been construed previously by other relevant authority); *Smith v. Goguen,* 415 U.S. 566, 571–76, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974) (the statute was rejected because at the relevant time it stood without prior judicial clarification); *see also United States v. Alford,* 274 U.S. 264, 266–67, 71 L. Ed. 1040, 47 S. Ct. 597 (1926) (the statute was upheld because it had been construed by prior judicial decisions); *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 589, 512 P.2d 1049 (1973), *cert. denied,* 418 U.S. 949 (1974) (statute upheld because it had been construed by both *prior* and subsequent judicial decisions).

[6] The constitutional problem illustrated by this case is dissimilar from those involving statutes found void for overbreadth. There the problem is not one of vagueness due to lack of an adequate standard (*i.e.,* lack of notice) but that the standard, even though clear, casts a net so broad that it goes beyond the bounds of the legislature's authority. In the true case of overbreadth the defendant need look no further than the statute. He is not complaining that he lacked notice but that the legislature attempted to cast too large a net. Consequently, since there is no claim of insufficient notice the courts have permitted judicial narrowing of a statute, supplied *subsequent* to the act in question, to be applied to a defendant. For example *see Winters v. New York,* 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665 (1948) and for comparison of lower court treatment *see People v. Winters,* 294 N.Y. 545, 63 N.E.2d 98 (1945); *Fox v. Washington,* 236 U.S. 273, 59 L. Ed. 573, 35 S. Ct. 383 (1914) and for comparison of lower court treatment *see State v. Fox,* 71 Wash. 185, 127 P. 1111 (1912).

derives much of its supportive definitional reasoning from the title of the chapter and the various section headings. While this may appear logical, it is contrary to the very legislation upon which it depends.

In 1975, *subsequent* to the crimes involved in *Carter,* but *prior* to the crimes charged herein, the legislature made major changes in the criminal code. Among the changes it provided in RCW 9A.04.010(5)

Chapter, section, and subsection captions are for organizational purposes only and shall not be construed as part of this title.

Consequently, the method of reasoning used in *Carter* is no longer available. Resort to chapter, section and subsection titles is entirely improper.

V

*The majority's definition of "prostitution" and explanation of "sexual conduct" further muddies already vague terminology.*

RCW 9A.88.030 defines "prostitution" as "sexual conduct with another person in return for a fee." In turn, the majority defines "sexual conduct" as "heterosexual genital intercourse" in an effort to clarify the legislative definition. The judicial definition is even less clear than the legislative. This is particularly true if one recalls the numerous acts which the two prosecuting attorneys thought were included within the statutory definition.

I assume the majority intends the word "genital intercourse" to have the usual and ordinary English meaning. *Webster's Third New Int'l Dictionary* (1971) defines "genital" as "relating to or being a sexual organ" and "genitalia" is defined as "the organs of the reproductive system; *esp*: the external genital organs." Consequently, the majority's definition, which further defines the legislative definition, apparently means sexual intercourse by means of the normal sexual or reproductive organs.

This raises an immediate question. Does the majority intend to include or exclude sexual conduct (under the

repealed 1973 statute) involving the mouth or anus? Both prosecuting attorneys in these consolidated cases appear to assume they are included. Yet, neither falls within the definition of "genital" or "genitalia". Or, does the judicially supplied definition include "masturbation"? Here the two prosecuting attorneys disagree. How is the ordinary person to use such a definition as a guide to conduct?

The majority's addition of the word "heterosexual" to its definition adds further confusion. If we assume it is to be given its common English meaning, it would appear to exclude acts of sexual conduct between members of the same sex, *i.e.*, homosexual conduct. But, this was not the intent of the legislature. The statute itself makes it clear that the majority's choice of the word "heterosexual" merely confuses an already badly confused situation. If the statute is void for vagueness, the judicially added explanation makes it even less understandable.

## VI

*Assuming the majority's definition is not vague it is wholly inconsistent with the statute it attempts to define.*

As indicated above, the legislature defined "prostitution" as "sexual conduct with another *person* in return for a fee." The majority has further refined the legislative definition to mean "*heterosexual* genital intercourse." The definition chosen by the majority is totally at odds with the criminal code, with RCW 9A.88.030 and with RCW 9A.88.050. The key word used by the majority is "heterosexual" which *Webster* defines as "sexual relationships between individuals of opposite sexes . . . opposed to *homosexual*".

The history of the criminal code reveals that in light of Const. art. 31, the Equal Rights Amendment, the legislature undertook massive corrective changes to ensure that the law applied with equal force to all persons without regard to sex. Laws of 1973, 1st Ex. Sess., ch. 154. The definition of "prostitution" was no exception. No longer was it an act committed only between males and females, as we

interpreted it earlier in *State v. Chemeres,* 20 Wn.2d 712, 147 P.2d 815, 150 P.2d 1012 (1944); *State v. Thuna,* 59 Wash. 689, 109 P. 331, 111 P. 768 (1910); *see also State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973). For the first time the crime of prostitution was extended beyond heterosexual intercourse (a limit applied by judicial interpretation) to include homosexual acts as well. This was accomplished by amending the law to have it apply to *persons* rather than to acts between males and females. Laws of 1973, 1st Ex. Sess., ch. 154, § 124. This important change was carried forward into the 1975 amendment of the criminal code by RCW 9A.88.030(1) which provides:

> A person is guilty of prostitution if such *person* engages or agrees or offers to engage in sexual conduct with another *person* in return for a fee.

(Italics mine.) Further, RCW 9A.88.050 eliminates any thought that "prostitution" now involves only heterosexual activity. It provides specifically:

> In any prosecution for prostitution, *the sex of the two parties* . . . to the sexual conduct engaged in . . . *is immaterial,* and *it is no defense* that:
> (1) *Such persons were of the same sex*; or
> (2) The person who received . . . *a fee was a male and the person who paid . . . such fee was female.*

(Italics mine.) Consequently, today "prostitution", as defined by RCW 9A.88.030 and .050 involves proscribed acts between *persons without regard to sex.*

The definition used by the majority (heterosexual genital intercourse) is not only vague, it is completely at odds with RCW 9A.88.030 and .050 both of which encompass not only heterosexual acts but the homosexual aspect of prostitution as well. Further, the attempted judicial definition does not comply with the legislature's adaptation of the questioned statutes to Const. art. 31. Such an abortive attempt at judicial definition cannot be permitted to stand, even by inference.

## VII

*The majority's strong reliance on United States v. Herrera and State v. Carter is misplaced. Neither is in point.*

The majority relies strongly on certain language in *United States v. Herrera*, 584 F.2d 1137 (2d Cir. 1978) and *State v. Carter*, 89 Wn.2d 236, 570 P.2d 1218 (1977). Without question material quoted from each case contains interesting language appearing to support the majority position. Neither case is in point, however.

Insofar as the instant case is concerned, *Herrera* is dependent for its validity upon two New York opinions: *People. v. Capparelli*, 29 App. Div. 2d 1000, 289 N.Y.S.2d 499 (1968) decided by the Supreme Court Appellate Division Third Department and *People v. Costello*, 90 Misc. 2d 431, 395 N.Y.S.2d 139 (1977) heard by the Supreme Court (*i.e.*, Superior Court of New York County). Both New York cases resolved the "void for vagueness" issue against the defendants. However, the point overlooked by the majority is that in each case the statute was found to pass the vagueness test because of judicial definitions or clarifications found in older cases decided considerably *prior* to the crimes being considered by those courts. In both cases it was clear the statute had been the subject of *prior* judicial definition which had become engrafted thereon as a part of the legislated act. Consequently, lack of *prior notice* because of *subsequent* judicial definition (an issue here) was not before either court. In this regard both cases fall within the exception discussed in footnote 5 above.

*Herrera* itself, citing the two New York cases for a definition of the questioned statute, falls in the same category. *Herrera* involved the *continuing crime* of harboring illegal aliens who were thereafter employed as prostitutes. Both New York cases had been decided before completion of the crime charged in *Herrera*. Thus, the *Herrera* court was provided with a definition of the crime *before* the defendants therein had completed the acts for which they were

charged. In each case there was *prior notice* of the standard in question. Such is not true of the instant case.

*Carter* also has language, which in the abstract, appears to lend support to the majority. However, *Carter* was decided *prior* to the 1975 legislative enactment which gives rise to the current question. A portion of the case quoted by the majority provides its own differentiation between *Carter* and the instant case: "The words 'in any house of prostitution,' *plus the chapter and section headings . . .* certainly provide a person of reasonable intelligence and understanding with notice immoral purposes meant sexually immoral purpose involving acts of prostitution." As pointed out above, not only does *Carter* deal with a repealed statute no longer applicable but RCW 9A.04-.010(5) now specifically forbids the *Carter* method of statutory construction, *i.e.*, the use of chapter and section headings for the purpose of statutory construction. Consequently, neither the statute nor the means of construction alluded to in *Carter* is applicable to this case.

For the numerous reasons set forth above, any one of which is sufficient to reach a different result than the majority, I am compelled to dissent.

HICKS, J., and RYAN, J. Pro Tem., concur with STAFFORD, J.

Reconsideration denied June 18, 1979.